DeShawna UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **DESHAWNA HOPKINS**      )  | |
|       Plaintiff,    ) | |
| ) | |
| v.              ) | Civil Action No.: 3:21-cv-315 |
| ) | |
| **VANGUARD INSPECTION**    ) | |
| **SERVICES and FANEUIL, INC.,**  ) | |
|       **Defendants**    ) | |

## COMPLAINT

Plaintiff DeShawna Hopkins ("Hopkins"), for her Complaint against Vanguard Inspection Services ("Vanguard") and Faneuil, Inc. ("Faneuil") (collectively "Defendants"), states as follows:

NATURE OF ACTION

1.   Hopkins brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and/or the Pregnancy Discrimination Act amendments to Title VII, 42 U.S.C. §2000e(k) ("PDA")*,* and/or the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611, *et seq.* ("FMLA"), in that Defendants terminated the Hopkins' employment in violation of the Title VII and the FMLA.

2.   Hopkins seeks declaratory judgment, injunctive relief, back pay, benefits, compensatory and punitive damages, reasonable attorney's fees and costs for Title VII violations; and declaratory judgment, injunctive relief, back pay, benefits, liquidated damages, reasonable attorney's fees and costs for FMLA violations.

## JURISDICTION AND VENUE

3.     This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 2000e-5 because Hopkins brings claims under Title VII and the FMLA. The demand for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4.     Venue is proper in the Eastern District of Virginia and in the Richmond Division under 42 U.S.C. § 2000e-5(f) which provides that venue is proper in any district court in the state; see also *General Electric Co. v. Merhige*, 1972 U.S. App. LEXIS 6632, No. 72-3327, 1972 WL 2610 (4th Cir. Nov. 20, 1972) (unpublished) (applying provision).

5.     Hopkins has exhausted all necessary procedural prerequisites and has filed her Title VII claims within ninety (90) days of her receipt of a "Right to Sue" letter from the Equal Employment Opportunity Commission.

## PARTIES

6.     Hopkins is a female resident of Winchester, Virginia. At all times relevant to the matters alleged herein, Hopkins was an employee within the meaning of Title VII pursuant to 42 U.S.C. § 2000e(f). At all times pertinent hereto, Hopkins had been employed by Vanguard and Faneuil for at least 12 months and had been employed for at least 1,250 hours of service during the twelve-month period immediately preceding the commencement of her leave. At all times pertinent hereto, Vanguard employed more than 50 employees at

Hopkins' worksite, and the total number of employees employed by Vanguard within 75 miles of that worksite was more than 50. At all times pertinent hereto, Faneuil employed more than 50 employees, and the total number of employees employed by Faneuil within 75 miles of Hopkins' worksite was more than 50.

7.     Vanguard is a joint venture among Atkins North America, Inc. ("Atkins"), Tidal Basin Government Consulting, LLC ("Tidal Basin"), and The Louis Berger Group, Inc. ("LBG"). LBG was purchased by WSP in December 2018. Faneuil, Inc. (Faneuil) is a subcontractor that provided staff for Vanguard Inspection Services, including Hopkins.  At all times pertinent hereto, Vanguard and Faneuil have been an "employer" within the meaning of 42 U.S.C. § 2000(b) and are subject to the provisions of Title VII.  At all times pertinent hereto, Vanguard and Faneuil have been an "employer" within the meaning of 29 U.S.C. § 2611(4)(A) and are subject to the provisions of the FMLA.  At all times pertinent hereto, Defendants have been an employer engaged in an industry affecting commerce with more than 50 employees for each working day in each of twenty or more calendar weeks in each relevant calendar year.

## FACTS

8.     Hopkins became employed by Vanguard and Faneuil ("Defendants") in October of 2017 as an accountant.

9. Hopkins worked on disaster relief programs and supported the accounting staff on matters unrelated to disaster relief programs. Hopkins remained employed after most other temporary employees had been let go, because Hopkins' was an asset to the accounting department.

10. In November of 2019, when Hopkins had been employed with Defendants for just over two years, Hopkins discovered that she was pregnant.

11. Hopkins initially told Dawn Hundley, her supervisor at Faneuil, about her pregnancy in November 2019, and discussed her pregnancy with Hundley again in January 2020 when Hopkins requested FMLA paperwork.

12. Hopkins told the Director at Vanguard, Tom Hanos, about her pregnancy in November 2019.

13. Hopkins told her supervisor at Vanguard, Jim Farrow, about her pregnancy in November 2019.

14. Hopkins told her other supervisor at Vanguard, Summer Griffin, about her pregnancy in December 2019.

15. Since she had been diagnosed with Aortic Stenosis Bicuspid, a rare heart condition, Hopkins' obstetrician diagnosed her pregnancy as "high risk" and initiated treatments and screenings accordingly. Hopkins gave birth to her baby on April 20, 2020.

16. Prior to and throughout her pregnancy, Defendants asserted no problems with Hopkins' performance; to the contrary, she performed her job responsibilities successfully and never received any write-ups.

17. On January 2, 2020, Hopkins sent an email to her supervisors at Vanguard, Summer Griffin and Jim Farrow, requesting a reasonable accommodation to be able to work from home more frequently due to her medical issues.

18. On January 6, 2020, Hopkins had a conference call with Griffin and Farrow where she discussed her need for working from home because of her pregnancy.

19. Hopkins sent a second email to Summer Griffin and Jim Farrow on January 21, 2020, requesting that she be provided with additional equipment to better assist her in working remotely.

20. Several employees in Hopkins' department and other departments worked from home regularly.

21. On January 21, 2020, Farrow responded that he would not have approved her request. Farrow also expressed his concern about "the amount of days you are starting to work from home" and "the frequency [of her] last minute requests."

22. Farrow further stated that her working from home was a burden on the team. The email further stated that Hopkins' last day of work would be on January 31, 2020.

23. Hopkins was working from home on January 21, 2020 because her toddler son was sick. Farrow commented, "I understand kids get sick; I've got two young kids myself and they always have something."

24. Shocked when she saw the email, Hopkins gathered herself together and drove to the office at Vanguard.

25. When Hopkins arrived at the office, she overheard her supervisor, Summer Griffin, on the phone talking to the management team telling them that Hopkins was not completing her job responsibilities.

26. Ms. Griffin's statements were pretext designed to hide the true reason, pregnancy and disability discrimination, of Hopkins' termination.

27. Defendants terminated Plaintiff on January 31, 2020 because of her pregnancy and serious medical condition, and because of her requests for reasonable accommodation and intermittent medical leave, in violation of Title VII and the FMLA.

28. As a result of Defendants' unlawful action, Plaintiff lost her job and income.

29. Defendant's decision to terminate Plaintiff was made in willful, blatant and intentional disregard of and in violation of Plaintiff's rights under Title VII and the FMLA.

**COUNT I**
**TITLE VII – GENDER/PREGNANCY DISCRIMINATION**

30. Each of the preceding paragraphs is incorporated herein by reference.

31. Plaintiff, because of her gender and pregnancy, was denied terms and conditions of employment in violation of Title VII of the Civil Rights Act of 1964, as amended.

32. Prior to taking discriminatory employment action against Plaintiff, Defendants became aware of Plaintiff's pregnancy.

33. Defendants' discrimination against Plaintiff was an intentional or reckless disregard of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

34. Defendants engaged in discriminatory actions described above with malice, or with a reckless indifference to Plaintiff's legal rights. Plaintiff is therefore entitled to punitive damages for Defendants' actions alleged herein.

35. Plaintiff has been damaged as a result of Defendants' unlawful conduct. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered great humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, loss of income, loss of employment, loss of employee benefits, litigation expense including attorney's fees, and consequential damages including the loss of employment opportunities, business and development opportunities, and other injury.

36. Due to the severity of the conduct by Defendants, Hopkins is entitled to punitive damages.

## COUNT II
## INTERFERENCE UNDER THE FMLA:
## FAILURE TO REINSTATE PLAINTIFF

37. Each of the preceding paragraphs is incorporated herein by reference.

38. Plaintiff provided Defendants with sufficient notice that she would be out of work on FMLA-covered intermittent medical leave, and that she would return to work at the end of six weeks after the birth of her baby.

39. As a matter of law, Plaintiff was entitled to reinstatement to her position or an equivalent position with the Defendants upon her return from her pregnancy and maternity leave.

40. Instead, Defendants terminated Plaintiff.

41. The acts and practices of Defendants complained of herein, including the termination of Plaintiff's employment during her FLMA-covered leave, were done as interference with Plaintiff's rights under the FMLA, in violation of 29 U.S.C. §§ 2614 and 2615(a)(1).

42. The acts and practices of the Defendants complained of herein were willful. Plaintiff is therefore entitled to liquidated damages under the FMLA.

43. Plaintiff has been damaged by Defendants' actions, including, but not limited to loss of employment, loss of compensation and employment related benefits, loss of health insurance for Plaintiff and her baby, and litigation expense including attorney's fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiff DeShawna Hopkins, requests judgment against Defendants as follows:

A.    For appropriate declaratory relief regarding the unlawful acts and practices of each Defendant, pursuant to Title VII of the Civil Rights Act of 1964 and the Family and Medical Leave Act of 1993;

B.    For an award of compensatory damages against Defendant Vanguard Inspection Services;

C.    For an award of punitive damages against Defendant Faneuil, Inc.;

D.    For pre-judgment and post judgment interest;

E.    For an award of back pay for violations of the Family and Medical Leave Act and under Title VII against both Defendants;

F.    For an award of liquidated damages in an amount to be determined at trial for willful violation of the Family Medical Leave Act against both Defendants;

G.    For an aware of an amount sufficient to offset any adverse tax consequences resulting from a lump sum aware or an aware of other relief in this action because she was required to file suit to enforce her federally protected rights;

H.    For an award of incidental and consequential damages, actual attorney's fees and costs of this action, including expert witness fees; and

I.   For such other and further relief to which Plaintiff may show herself justly entitled.

**TRIAL BY JURY IS REQUESTED**

DESHAWNA HOPKINS


_____/s/ Tim Schulte_____
Tim Schulte (VSB # 41881)
Blackwell N. Shelley, Jr. (VSB #28142)
Shelley Cupp Schulte, P.C.
3 West Cary Street
Richmond, Virginia 23220
(804) 644-9700
(804) 278-9634 [fax]
schulte@scs-work.com
shelley@scs-work.com


Matthew T. Sutter (VSB # 66741)
Sutter & Terpak, PLLC
7540 Little River Turnpike, Suite A
Annandale, Virginia 22003
(703) 256-1800
(703) 991-6116
matt@sutterandterpak.com

*Counsel for Plaintiff*

/